BERGOFF DETECTIVE SERVICE, INC., Respondent, *v.* JOHN WALTERS, Appellant.

First Department, November 17, 1933.

*Lawrence R. Condon* of counsel [*Charles P. Connell* with him on the brief; *Lawrence R. Condon*, attorney], for the appellant.

*Claude L. Gonnet* of counsel [*Arthur Frank* with him on the brief; *Arthur Frank*, attorney], for the respondent.

GLENNON, J. This action, by a private detective agency, is founded upon an alleged contract to obtain evidence of adultery on the part of the wife of the defendant. Inasmuch as this appeal is from an order to dismiss the complaint for insufficiency, a *résumé* of its allegations is necessary. It avers in substance: In December, 1932, the defendant, a member of the New York Stock Exchange and a man of social standing and prominence, and his wife, Esther Smith Walters, were estranged, had separated and were living apart. At that time the wife had threatened to institute proceedings for an absolute divorce in the State of New York because of defendant's adultery, of which the wife claimed to have due proof. Furthermore,. the wife had made exorbitant demands upon defendant for a financial settlement. Defendant greatly feared the institution of a divorce proceeding by his wife, as well as the probable consequences thereof and,

furthermore, was in grave danger of being forced to accede to his wife's exorbitant financial demands. In addition, defendant had reason to believe that an illicit relationship existed between his wife and one Joseph A. Dempsey, although he, despite the employment of private detectives, had been unable to obtain any evidence or proof thereof. On December 17, 1932, defendant informed plaintiff of the state of his domestic affairs as just recited, and employed plaintiff as a private detective and investigator, to assist him in securing evidence or proof of the infidelity of his wife and of her illicit affair with Joseph A. Dempsey. Plaintiff accepted upon certain terms and conditions.

The terms and conditions are of such paramount importance in reaching a proper determination in this case that they are set forth at length as follows:

" IX. That under such employment the plaintiff agreed to investigate the actions and movements of the defendant's said wife, Esther Smith Walters, and of said Joseph A. Dempsey, to apprise the defendant of their actions and movements, to take such other steps and to hire such operatives and other persons as might be necessary or deemed advisable or as the defendant might instruct the plaintiff, to enable the defendant to obtain evidence of his said wife's infidelity and of her illicit relationship with said Joseph A. Dempsey.

" X. That in consideration of the services to be rendered by the plaintiff under such employment, the defendant agreed with the plaintiff, as follows: First, that he would reimburse the plaintiff for all expenditures or disbursements made by the plaintiff in the course of such employment, including the cost of hiring operatives; and Secondly, that he would pay the plaintiff the additional sum of Ten thousand ($10,000) Dollars in the event the plaintiff succeeded in securing evidence or proof of the illicit affair of his said wife, Esther Smith Walters with said Joseph A. Dempsey, or of other infidelity on her part, or in the event that, as the result of information or evidence secured by the plaintiff under such employment, the defendant succeeded in forestalling the institution by his said wife of divorce proceedings in the State of New York because of the defendant's adultery and in prevailing upon his said wife to substantially reduce her exorbitant financial demands upon him and to accept a financial settlement satisfactory to the defendant.

" XI. That it was agreed between the plaintiff and the defendant that the aforesaid payments by the defendant would be made as follows: That the defendant would pay weekly one-half the cost of the hire of operatives by the plaintiff, such weekly pay-

ments not to exceed Two hundred and eighty ($280.00) Dollars, that the defendant would reimburse the plaintiff weekly for all other ordinary expenditures made by the plaintiff and for all special, unusual or extraordinary expenditures authorized by the defendant, and that the unpaid balance of all expenditures made by the plaintiff under such employment would be paid by the defendant upon the termination of plaintiff's services; and that the defendant would pay the stipulated sum of Ten thousand ($10,000) Dollars for plaintiff's services upon the successful termination thereof as hereinabove alleged.

" XII. That promptly upon such employment by the defendant on or about December 17, 1932, the plaintiff entered upon the performance of its duties; that with the assistance and under the direction and instructions of the defendant the plaintiff did by divers means investigate the actions and movements of the defendant's said wife, Esther Smith Walters, and of said Joseph A. Dempsey and did cause the said Esther Smith Walters and said Joseph A. Dempsey to be continually shadowed by operatives hired by the plaintiff and did constantly apprise the defendant of the actions and movements of the said Esther Smith Walters and Joseph A. Dempsey, with the result that on different occasions in the months of January and February, 1933, the plaintiff did secure definite information of the existence of the illicit relationship between the defendant's said wife, Esther Smith Walters and said Joseph A. Dempsey, and of the infidelity of the defendant's said wife, and did on such occasions place the defendant in position to secure evidence or proof of said illicit affair and said infidelity; but the defendant failed and refused to avail himself of such opportunities, except as otherwise alleged in paragraph XV hereof, and refused to allow, but on the contrary forbade the plaintiff from proceeding with the actual obtaining of such evidence and proof.

" XIII. That thereafter and on or about the 23rd day of February, 1933, the defendant requested the plaintiff once more to investigate the actions and movements of his said wife, Esther Smith Walters, and of Joseph A. Dempsey and to continue rendering services in order to secure evidence of his said wife's illicit affair with said Joseph A. Dempsey, which the plaintiff thereupon agreed to do upon the express agreement and promise by the defendant that in the event the plaintiff again placed the defendant in position to secure evidence or proof of said infidelity or of said illicit affair, or in the event that the defendant was enabled to forestall the institution by his said wife of divorce proceedings in the State of New York because of the defendant's adultery and to prevail upon

his said wife substantially to reduce her financial demands upon him and to accept a financial settlement satisfactory to the defendant, the defendant would pay the plaintiff in consideration for such additional services an additional sum of Five thousand ($5,000) Dollars or a total sum of Fifteen thousand ($15,000) Dollars, besides reimbursing the plaintiff for its expenditures and disbursements as aforesaid.

" XIV. That thereupon the plaintiff did resume the performance of its duties, with the assistance and under the direction and instructions of the defendant did again investigate the actions and movements of the defendant's said wife, Esther Smith Walters, and of said Joseph A. Dempsey, and did constantly apprise the defendant of such actions and movements, with the result that in or about the first week of April, 1933, the plaintiff did again secure definite information of the infidelity of the defendant's said wife, Esther Smith Walters, and of her illicit relationship with Joseph A. Dempsey, and did again place the defendant in position to secure evidence or proof of said infidelity and said illicit affair; but the defendant again failed and refused to avail himself of such opportunity, except as otherwise alleged in paragraph XV hereof, and refused to allow, but on the contrary forbade the plaintiff from proceeding with the actual obtaining of such evidence and proof.

" XV. Upon information and belief that the defendant availed himself of the information and evidence secured as aforesaid by the plaintiff in the negotiations with his said wife, and as the result of the services rendered by the plaintiff as aforesaid, the defendant did succeed in forestalling the institution by his said wife against him in the State of New York of proceedings for an absolute divorce because of the defendant's adultery, did succeed in prevailing upon his said wife to divorce him in the State of Nevada, did succeed in prevailing upon his said wife to substantially reduce her exorbitant financial demands upon him and did succeed in making a satisfactory financial settlement with his said wife upon terms extremely favorable to the defendant."

The court at Special Term has held that the agreement, by reason of the contingent character of the compensation, apparently is unenforcible. However, it expressed the opinion that the services to be performed by plaintiff were not in themselves illegal " either intrinsically or under the circumstances under which they were to be rendered, or under the laws of this State." The court accordingly held that the allegations of the complaint are sufficient to permit recovery on a *quantum meruit*.

We do not believe that a recovery upon the alleged contract

can be permitted on any theory. The contract is unquestionably void, illegal, unenforcible and in contravention of the public policy of this State. As was said in *Lyon* v. *Hussey* (82 Hun, 15): " The recognition of contracts of this character would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such a contract could never be recognized in any court of justice."

In this case plaintiff's compensation of $15,000 was contingent upon defendant's success in adjusting his marital difficulties in a manner satisfactory to himself. In fact, the complaint alleges as the basis for plaintiff's right to compensation (1) that defendant did succeed in forestalling the institution by his wife of proceedings for an absolute divorce in the State of New York, because of his own adultery; (2) that he did succeed in prevailing upon his wife to divorce him in the State of Nevada, and (3) that he did succeed in prevailing upon his wife to substantially reduce her exorbitant financial demands upon him and did succeed in making a satisfactory financial settlement with his wife upon terms extremely favorable to him. And all this was upon evidence which plaintiff allegedly procured for defendant upon a contingent basis.

A clear statement of the law and of the policy adopted by the courts under similar circumstances is found in the case of *Hare* v. *McGue* (178 Cal. 740). It is to be noted that the ruling of the California court was based in part upon the authority of *Lyon* v. *Hussey* (*supra*). It was stated: " There can be no question about the legal proposition asserted by appellant. We must accept as clearly established that the law is extremely solicitous about the maintenance of the marriage relation, and will not tolerate or sanction any contract which by its terms or obvious tendency has for its object the securing of a divorce. The further proposition, extending, however, not particularly to divorce suits, but to all kinds of litigation, is equally true, that a contract is void whereby one agrees to obtain or procure testimony of certain facts which will successfully support or defeat a lawsuit, or which provides that payment to the party procuring such testimony is to be contingent upon the result of the action for which he is engaged to procure it. It is the element of payment contingent on the success of the litigation in which the evidence is to be produced, or the fact that the agreement is to procure evidence not of facts as they exist, but of particular facts necessary to the success of the party litigant who contracted for their production, which vitiates

the contract. It is the contingency on the one hand and the agreement to furnish a given set of facts essential to a successful litigation on the other, and both of which in their nature are calculated to induce false charges and the production of perjured testimony to subvert the truth and pervert justice through fraud, trickery, and chicanery at the hands of unscrupulous private detectives or other conscienceless persons, which has impelled the law, with wisdom, to declare such contracts illegal. (*Patterson* v. *Donner*, 48 Cal. 369; *Lyon* v. *Hussey*, 82 Hun, 15; 31 N. Y. Supp. 281.) "

It is to be remarked that the contract upon which a recovery was sought in the California case did not provide for a contingent fee. The compensation of the attorney and of the private detective was fixed, regardless of the success or failure of the litigation. It was accordingly pointed out by the court that for this reason the services rendered by the attorney and the detective were not intrinsically illegal since there is no rule of law which precludes a party in a divorce action, or in any other action, from employing a person to investigate existing facts and procure witnesses who will testify for him. In this case, however, the compensation of plaintiff was fixed strictly on a contingent basis, and thus the contract comes under the ban of the law. The contract has inherently within it an element, the tendency of which is to undermine the administration of justice by a temptation to commit subornation of perjury. It places before the eyes of one of the parties a reward or bonus which might readily induce fraud and trickery instead of honest endeavor with honest results. In view of these observations we are constrained to hold that the services rendered were intrinsically illegal and that no recovery can be had on any theory.

The respondent seeks to justify its position by the assertion that the agreement had for its sole object to defend against threatened assaults and is, therefore, legal. With this contention we cannot agree. Whether the contract be viewed as one to sustain a defense of recrimination, or to establish a counterclaim on defendant's part for an absolute divorce in any action brought by his wife, or to forestall a threatened divorce suit based upon defendant's adultery, it is void and illegal, not on the ground that the services were in themselves intrinsically illegal, but upon the fact that the contingent nature of the compensation made them illegal. Here plaintiff was to receive no compensation except (1) in the event defendant succeeded in securing evidence of infidelity on the part of his wife, or (2) in the event that, as the result of information or evidence secured by plaintiff under its employment,

the defendant succeeded in forestalling the institution by his wife of divorce proceedings in the State of New York because of defendant's adultery and in prevailing upon his wife to substantially reduce her exorbitant financial demands and to accept a financial settlement satisfactory to defendant. Plaintiff claims to have produced just such results and, in addition, to have made it possible for defendant to succeed in prevailing upon his wife to divorce him in the State of Nevada. Under these circumstances, the services rendered must be held to be intrinsically illegal and no recovery can be permitted on any theory.

This ruling applies not only to the contingent compensation but also to the disbursements made by plaintiff. Since the contract, because of its nature, was illegal in its entirety as against public policy, plaintiff is debarred from recouping any moneys that it may have expended under it.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion to dismiss the complaint granted, with ten dollars costs.

FINCH, P. J., MARTIN, O'MALLEY and TOWNLEY, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.