Carl E. **PERSON**, Plaintiff,

v.

The **ASSOCIATION OF the BAR OF the CITY OF NEW YORK et al.,** Defendants.

No. 75 C 1473.

United States District Court,
E. D. New York.

March 24, 1976.

See also, D.C., 414 F.Supp. 133, 414 F. Supp. 144.

Carl E. Person, plaintiff, pro se.

Haliburton Fales, 2d, New York City (White & Case, and Robert G. Haile, Jr., New York City, of counsel), for The Association.

Daniel M. Cohen, New York City (Louis J. Lefkowitz, Atty. Gen., New York City, of counsel), for defendants other than the Bar Association, and for the Attorney General under Executive Law, § 71.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

Plaintiff has applied for the convening of a three judge court (28 U.S.C. § 2281) on the basis that the second count of the complaint challenges on constitutional grounds the validity of certain sections of the Judiciary Law of New York as implemented through the rules of the Appellate Divisions and the Lawyer's Code of Professional Responsibility. Broadly, plaintiff, a lawyer, contends that, as implemented and threatened to be applied, the statutes, rules and code stifle the prosecution and fair trial of litigation (such as antitrust triple damage cases) by making impossible the financing of such costly litigation. Plaintiff particularly points to the canons of professional conduct that, in substance, forbid the transfer for value of shares in the rights of action, and forbid the retention of expert witnesses whose compensation would be contingent on the success of the suit and would be measured upon the amount of the recovery.

The complaint names other courts and bar associations, bar association members, and clients of such members as coconspirators to the extent that they have joined in adopting or enforcing laws and rules

". . . which prohibit clients pursuing antitrust claims and/or their attorneys working on a contingent-fee basis from obtaining the money to pay the litigation expenses by selling a percentage of their respective interests in the antitrust claims to private or public investors and from employing expert witnesses to testify at the trial on a contingent-fee basis;"

Plaintiff as counsel is prosecuting a particular antitrust case which, it is alleged, has become so expensive that the plaintiffs in it cannot bear the expense of bringing it to trial and retaining experts to testify and to prepare necessary accounting, survey, statistical and economic studies. Plaintiff alleges that he plans to and would, but for the statutes, rules and canons which appear to forbid it, seek investors, by private or public offering, whose investments would finance the pending litigation in exchange for the investors' receiving interests in the claim that in the aggregate would not exceed 50% of the final recovery; it is contemplated that the investors would not acquire any right to control the litigation, render legal advice about it, or engage in the practice of the law in connection with the case.

Plaintiff alleges that defendants in such cases as antitrust cases usually can afford to and do retain experts to aid in their defense, that such experts are often drawn from firms of experts who have regularly served the defendants in the past, expect to serve them in future, and may, therefore, be supposed to be influenced as expert witnesses by those factors; plaintiff complains that, in contrast, plaintiffs are not free to retain experts whose compensation will be based on the amount of the recovery if there is any; this, plaintiff complains, is a legally enforced disparity in treatment that transgresses constitutional rights.

Hence, plaintiff argues that the Court should declare invalid the laws that, as implemented and applied, impose these radical and discriminatory disparities in rights of access to the courts of justice and in the

ability of the less affluent litigants to vindicate their rights of property, and, further, that the court should enjoin their enforcement by defendants.

The parties have argued, in the main, the quality of the constitutional arguments advanced, plaintiff contending that they are substantial, the defendants that they are too insubstantial to justify convening a court under 28 U.S.C. 2281. It can well be thought that no threat of execution or enforcement is present, and that the case is, rather, one in which plaintiff's plans are frustrated by legal uncertainties that require resolution by ruling or, if need be, by judicial declaration.

While the briefs discuss champerty, maintenance and barratry, the discussion is wide of the mark and assumes rather than illuminates the points in issue. What is principally involved is the application of Judiciary Law § 90(2), vesting the state supreme court with "power and control" over lawyers and the practice of the law and authorizing the appellate divisions to censure, suspend from practice or disbar lawyers who are guilty of professional misconduct or conduct prejudicial to the administration of justice and of the rules of several appellate divisions that define professional misconduct. The Appellate Division, First Department, defines such misconduct in its Rules § 603.2 as including violation of any Disciplinary Rule of the Code of Professional Responsibility as adopted by the State Bar Association effective January 1, 1970. Section 691.2 of the Second Department Rules is in the same language. Section 1022.17 of the Fourth Department rules similarly incorporates the Code of Professional Responsibility. Plaintiff emphasizes the incorporation from the Code, in this manner, of DR 2–103(D) (a lawyer may not help a person or organization that furnishes legal services to others to promote use of the lawyer's services); DR 2–106(A) (a lawyer may not contract for or receive excessive fees); DR 2–107(A) (a lawyer may not divide fees with another lawyer unless done with the client's assent and in proportion to services rendered and responsibility assumed); DR 3–101(A) (a lawyer is not to help a layman practice law); DR 3–102 (a lawyer is not to divide fees with a layman); DR 5–103(B) (a lawyer is not to advance or guarantee financial assistance to a litigant except to the extent of direct litigation expenses, and the client must remain liable for the expenses); DR 5–107(C) (a lawyer may not practice in corporate or association form if nonlawyers own an interest in or are directors or officers of the entity or have the right to direct or control the lawyer's professional judgment); DR 7–109(C) (a lawyer may not pay, or acquiesce in the paying of, compensation to a witness contingent upon the content of his testimony or the outcome of the case, but may advance, guarantee, or acquiesce in the payment of a reasonable fee for the professional services of an expert witness). DR 5–103 provides that a lawyer shall not acquire a proprietary interest in the cause of action or subject matter of a litigation he is conducting for a client, but may acquire his lien for services under applicable law, and may contract for a reasonable contingent fee.

The disciplinary rules in part lead back to First Department Rules § 603.18 (Champerty and Maintenance) and an identical Second Department rule provision (Section 691.15). These rules in substance forbid (1) the lawyer's giving in his own or in another's name, before or after suit, a promise of anything of value to anyone to induce the placing of a claim in his hands or in the hands of another for the purpose of suing on it or defending against it, and forbid (2) the lawyer's paying any expense of prosecuting or defending against the claim as a consideration for such retainer.

The Judiciary Law covers some of the same ground. Sections 479, 481, and 482 make it unlawful for anyone to solicit or procure through solicitation a retainer for an attorney or to make a business of doing so, and make it unlawful for hospital employees, policemen, court personnel, or bailbondsmen to communicate with an attorney to aid or abet him in soliciting legal business or in procuring through solicitation a

retainer or other agreement to perform legal services, and make it unlawful for the attorney to employ anyone to solicit, or to aid or abet in soliciting legal business or a retainer. These acts are made misdemeanors by Section 485.

Section 488 is closer to the classic definition of champerty: the section forbids lawyers' buying or taking any interest by assignment in any sort of thing in action "with the intent and for the purpose of bringing an action thereon," and forbids lawyers' promising or giving a valuable consideration to anyone as an inducement to or in consideration for the placing in his hands (or another's) of a claim for the purpose of suing on it. Section 489 enacts that persons and partnerships engaged in the claim adjustment or collection business and corporations generally shall not buy or take any interest by assignment in any thing in action, claim or demand "with the intent and for the purpose of bringing an action . . thereon."

It is not at once apparent that any transgression of statute or rule must occur if plaintiff's client transfers interests in the claim in suit as a means of obtaining money to continue the suit to completion. The client has already put the claim in suit and engaged counsel of its own choosing. There is no suggestion that any voice in controlling the litigation would be given to the transferees of interests. Plaintiff alleges (as in paragraphs 14 and 17) that the transfer would embrace a corresponding share in plaintiff's contingent fee, but that, in substance, means only that plaintiff's original clients will pay plaintiff out of their share in the final recovery, and, presumably, that circumstance will enter into the client's calculations of what share of the claim he will sell and at what price.

At this juncture, leaving aside Disciplinary Rule DR 7–109(C), there does not appear to be any threat of action to prevent partial assignments of the rights of action sued on, and there is no basis, simply for that reason, for seeking to enjoin state officers from enforcing statutes and rules of, at best, doubtful applicability and in advance of their infraction. Rather, the case is one in which no threat of interference could easily arise unless plaintiff had sought from the Committee on Ethics of the Bar Association and been denied a favorable opinion on the ethical propriety of his project. If that occurs, then consideration of the issues tendered here will have to be resumed, although it seems questionable that, quite apart from any constitutional issues and the question of the substantiality of any such issues, the threat of enforcement by state officers will be such as to bring the case within Section 2281.

The questions circling around Disciplinary Rule DR 7–109(C) stand in a different light. To quote it in full—it is subsumed under Canon 7 which provides that "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law"—

> "A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case. But a lawyer may advance, guarantee, or acquiescence in the payment of:
> 1. Expenses reasonably incurred by a witness in attending or testifying.
> 2. Reasonable compensation to a witness for his loss of time in attending or testifying.
> 3. A reasonable fee for the professional services of an expert witness."

The language of the rule literally means that the fee arrangement of an expert for his services in a litigation may not be contingent on the outcome of the case no matter how reasonable in amount and how probable the outcome and whether or not counsel in the same case are authorized (under Disciplinary Rule DR 5–103(A)(2)) to receive a fee contingent on the outcome of the case. The rule must be related to a risk of false swearing, the fear of which may be enhanced by a recognition that much expert testimony is difficult, often inscrutable and, therefore, especially open to calculated distortion. A fairly old—and difficult—New York case, *Wellington v. Kelly*, 1881, 84 N.Y. 543, 548–549, dealing with an agreement to compensate a witness for the pro-

duction of critical testimony, approved contingent payment on the ground that the witness had an interest in the outcome of the case in any event, saying

> "The mere fact that the agreement might furnish a temptation to Hill [the witness] to prevaricate, or furnish false testimony, does not, we think, stamp the agreement as illegal *per se,* and no illegal or improper intent on the part of any of the parties is disclosed by the evidence."

But generally the New York cases enunciate the rule of Dr 7–109(C) very clearly. *Matter of Schapiro,* 1st Dept.1911, 144 App. Div. 1, 128 N.Y.S. 852; *Laffin v. Billington,* Sup.App.Term 1st, 1904, 86 N.Y.S. 267. The Restatement of the Law, Contracts, § 552(2) is precisely to the same effect, as are 14 Williston, Contracts (3rd ed. 1972) 879 (§ 1716) and 6A Corbin, Contracts 379 (§ 1430). And the same rule is followed in N.Y.City Bar Assoc. Opinions No. 213 (1932) and 76 (1927–28). Only *Barnes v. Boatmen's Nat'l Bank of St. Louis,* 1941, 348 Mo. 1032, 156 S.W.2d 597 has been turned up as a case looking the other way. See also the language in *Alexander v. Watson* 4th Cir. 1942, 128 F.2d 627, 630; *Ferroline Corp. v. General Aniline & Film Corp.,* N.D.Ill.1952, 107 F.Supp. 326, 344; aff'd., 7th Cir. 1953, 207 F.2d 912, 916. The *Barnes* Court's holding sufficiently appears from the following excerpt:

> "Of course, counsel representing the administratrices knew that they must produce evidence to combat the presumption of Hugh Thomasson's sanity; however, there is nothing in the letter requiring respondent to furnish evidence to prove any specified fact. Nor is there anything in the evidence tending to show that respondent's testimony and advice was not his honest opinion. As this point is being ruled on appellant's demurrer to the evidence, we are not at liberty to draw the inference that respondent's testimony was false because his fee was contingent upon the success of the litigation. If we did so, we would be compelled to infer that a party litigant's testimony was false because he is interested in the outcome of his litigation. We

would also have to infer that all witnesses were guilty of perjury who were produced by an attorney trying a case on a contingent fee basis.

> "We therefore hold that a valid contract does not become invalid as against public policy because the respondent was to be paid for his services only on the contingency that the estate of Hugh Thomasson should be successful in its various litigations then pending."

In this state of the law it would appear unlikely in the extreme that plaintiff could hope to obtain a favorable ruling from the Committee on Ethics. Yet without a ruling of some sort it is all but certain that he could not obtain an expert on a contingent fee basis, and, even if he could do so, and went forward, he would risk disciplinary proceedings. Plaintiff is, then, so far as concerns DR 7–109(C), in the classic declaratory judgment plaintiff's posture (28 U.S.C. 2201; cf. *Aetna Life Ins. Co. v. Haworth,* 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; *Willing v. Chicago Auditorium Ass'n,* 1927, 277 U.S. 274, 288–289, 291, 48 S.Ct. 507, 508–509, 510, 72 L.Ed. 880, 884, 885) unless his contentions are so insubstantial that they can be characterized as frivolous. The contention in essence is that the disciplinary rule, whether or not it expresses a tradition in the law of contracts, is irrational and operates in such a manner as to discriminate against those who cannot afford expert testimony, and may tend to deny to the less affluent litigant (typically but not necessarily a plaintiff) access to the courts in cases which, if fairly and fully tried, might be shown to be meritorious. The pungent comment of the Missouri court could well be thought to answer the claim of frivolity, and it might well be suggested that Dr 7–109(C) ignores the idea that an expert in ordinary expectation would not engage to misrepresent his opinion for a fee measured on the outcome of the case rather than decline to act in a case in which he did not in fact form an opinion favorable to the contention of the party seeking to engage his expertise. It is difficult to understand the basis on which a compensated expert

could ever be heard as a witness if the ordinary expectation were that experts generally will distort or misrepresent their opinions for a fee. Contingency of payment might seem on analysis an irrelevancy: reasonableness might appear to be the touchstone and no less the touchstone for licit contingent fees than for fees payable in all events.

But again it is clear that the case is not one for an injunction within Section 2281, and is not a case for convening a three judge court.

It is, accordingly,

ORDERED that plaintiff's motion to convene a three judge court under 28 U.S.C. § 2281 is in all respects denied.