Carl E. PERSON, Plaintiff-Appellee,

v.

The ASSOCIATION OF the BAR OF the CITY OF NEW YORK et al., Defendants-Appellants.

No. 590, Docket 76–7457.

United States Court of Appeals, Second Circuit.

Argued March 8, 1977.

Decided April 29, 1977.

Rehearing Denied June 14, 1977.

See also 414 F.Supp. 133, 139.

Daniel M. Cohen, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of

N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for appellants.

Carl E. Person, appellee pro se.

Before KAUFMAN, Chief Judge, SMITH and MULLIGAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Supreme Court, Appellate Division, First Department, Supreme Court, Appellate Division, Second Department, and the Attorney General of the State of New York, defendants below, appeal from a summary declaratory judgment in the United States District Court for the Eastern District of New York, John F. Dooling, Jr., *Judge,* which declared unconstitutional Disciplinary Rule 7–109 C of the Lawyers' Code of Professional Responsibility ("DR 7–109 C"). This rule has been adopted by the New York State Bar Association and incorporated in Rule 603.2 of the Rules of the Appellate Division, First Department, and Rule 691.2 of the Rules of the Appellate Division, Second Department.[1] The rule was declared unconstitutional insofar as it proscribes the payment by attorneys of reasonable fees for the professional services of expert witnesses if payment of the fees is contingent upon the outcome of the case.[2] We reverse.

The sole issue on appeal is the constitutionality of DR 7–109 C, Person having abandoned all claims except those specifically ruled upon by the court below.[3]

New York Judiciary Law § 90(2) vests the state supreme court with "power and control" over lawyers and the practice of the law and authorizes the appellate divisions to censure, suspend from practice, or to disbar lawyers who are guilty of professional misconduct or conduct prejudicial to the administration of justice. Such misconduct is defined by § 603.2 of the Rules of the First Department and § 691.2 of the Rules of the Second Department to include violations of any disciplinary rule of the Code of Professional Responsibility as adopted by the State Bar Association, including DR 7–109 C.

Plaintiff-appellee, Carl E. Person, is the attorney for ten plaintiffs in an antitrust action in the Southern District of New York, *National Auto Brokers Corp. v. General Motors Corp.* (70 Civ. 5421), the "Nabcor action," in which plaintiffs are seeking $300,000,000 in damages.[4] Person alleges, *inter alia,* that he is unable to prosecute the Nabcor action because neither National Auto Brokers Corp. nor any of the other plaintiffs in the suit, can afford adequate expert testimony in the fields of accounting, franchising, financing and economics, unless he is permitted to retain experts on a contingent fee basis, a practice not permitted under DR 7-109 C. His specific allegations have been set out by the court below.

1. Disciplinary Rule 7–109 C states:

    A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case. But a lawyer may advance, guarantee, or acquiesce in the payment of:
    1. Expenses reasonably incurred by a witness in attending or testifying.
    2. Reasonable compensation to a witness for his loss of time in attending or testifying.
    3. A reasonable fee for the professional services of an expert witness.

2. The Code of Professional Responsibility was adopted by the American Bar Association on August 12, 1969 and became effective January 1, 1970. McKinney's Consol. Laws of N.Y., Book 29, Judiciary Law, Appendix at 351, 499. The Association of the Bar of the City of New York, a defendant below, has not taken a separate appeal. It views itself as an investigative

and prosecutorial agency of the First Department. (First Department Rules, § 603.4). Appellants' Brief at 2.

3. Person moved to convene a three-judge district court below to declare unconstitutional those sections of the New York Judiciary Law which forbid the transfer for value of shares in rights in action and the retention of expert witnesses whose fee is contingent on the outcome of the suit. This motion was denied below. *Person v. Association of the Bar of the City of New York,* 414 F.Supp. 139 (E.D.N.Y. 1976). Person then moved for a summary declaratory judgment solely on the issue of the validity of DR 7–109 C.

4. See published opinions in Nabcor action: 332 F.Supp. 280 (S.D.N.Y.1971); 60 F.R.D. 476 (1973); 376 F.Supp. 620 (S.D.N.Y.1974).

**536**

*Person v. Association of the Bar of the City of New York,* 414 F.Supp. 139, 140 (E.D.N.Y.1976).

The district court granted summary judgment because it found that DR 7–109 C foreclosed a lawyer's effort to obtain expert testimony. The court agreed that in the Nabcor action, Person had demonstrated that he was unable to obtain needed accounting and economic testimony because of his clients' lack of funds and the inhibition of the disciplinary rule, and that he was therefore rendered less effective than, in his judgment, he would have been if he were able to seek out expert testimony on a contingent fee basis. In addition to a litigant's interest in having genuine access to the court, the attorney, the court held, had an interest in being able freely to seek out and contract on a contingent fee basis with qualified experts where that is the only or most appropriate way in which a client can afford to retain expert services. It found that no basis in reason exists for rejecting a reasonable fee arrangement simply because the fee will not be paid if the client does not prevail in the case. 414 F.Supp. 144. The court held that

> to treat contingency of payment as in and of itself improper is too irrational to survive Fourteenth Amendment analysis. The interest in access to the courts on the basis of equality may not exact redress of every imbalance that disparity of means can produce, but it is of such fundamental importance that it cannot be subjected to a constraint that is not adapted to effective achievement of its professed goal and which exacts a sacrifice which must, in any case, be disproportionate to the merely conjectured probability of occurrence of the wrong aimed at. [414 F.Supp. at 146].

The court cited *Boddie v. Connecticut,* 401 U.S. 371, 377, 379–380, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), and *Winters v. Miller,* 446 F.2d 65, 71 (2d Cir.), *cert. denied,* 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971), in support of its holding, and entered summary judgment declaring Disciplinary Rule 7–109 C unconstitutional.[5]

**I.**

Jurisdiction below is based on 28 U.S.C. § 1343(3), 42 U.S.C. § 1983, and on 28 U.S.C. § 2201. Before proceeding to the merits, we first address appellants' claims that the court lacks subject matter jurisdiction because no case or controversy exists, and that the Appellate Division defendants are not "persons" within the meaning of the Civil Rights Act.

■ The disciplinary rule at issue has been incorporated into the laws of the State of New York. Payment by an attorney of contingent fees for expert testimony, offers to pay, or acquiescence in the payment of contingent fees, are all forbidden under DR 7–109 C. The district court concluded that "[t]he Rule, unless ignored, must of itself foreclose a lawyer's effort to obtain expert testimony and go far to deny to the lawyer the opportunity to demonstrate the availability of such testimony . . . ." 414 F.Supp. at 145. The underlying action is still pending and the present claim may well determine the plaintiff's ability to pursue it. Since there is no reason to assume that the rule will not be enforced, we find a substantial controversy of sufficient immediacy to warrant the issuance of a declaratory judgment.[6] *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

State disciplinary and disbarment proceedings have been held comparable to criminal proceedings. *In re Ruffalo,* 390

**5.** Person had moved pursuant to Fed.R.Civ.P. 41(a)(2) to dismiss all claims not adjudicated by grant of the summary judgment. The court granted his motion and entered summary judgment declaring DR 7–109 C unconstitutional on August 12, 1976 in accord with its Memorandum and Order of June 25, 1976. Joint Appendix 177–79.

**6.** Appellants argue that "DR 7–109 C does not and did not prevent plaintiff from arranging with an expert to testify on a contingent fee basis provided DR 7–109 C was declared unconstitutional." Appellants' Brief at 8. This argument is circular and without merit. It is the constitutionality of the rule which is at issue in this case.

U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Because the threat of disciplinary action is real but state proceedings have not yet been instituted which would prevent federal review under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Anonymous v. Association of the Bar of the City of New York,* 515 F.2d 427, 430 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975), this is an appropriate time for a declaratory judgment. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930–31, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ We hold further that this suit for declaratory relief is maintainable against defendants-appellants under 42 U.S.C. § 1983. Although a judge exercising his judicial function is not liable for damages under 42 U.S.C. § 1983, *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the immunity of judges has been held in a number of cases not to extend to actions for injunctive relief. *Littleton v. Berbling,* 468 F.2d 389, 406–07 (7th Cir. 1972), *rev'd on other grounds sub nom. O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Erdmann v. Stevens,* 458 F.2d 1205, 1210 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972); *Law Students Civil Rights Research Council, Inc. v. Wadmond,* 299 F.Supp. 117, 123 (S.D.N.Y.1969) (three-judge court), *aff'd on other grounds,* 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).[7]

## II.

■ The district court held that an attorney has a right to retain experts on a contingent fee basis whenever this is appropriate for the most effective prosecution of a civil action. It held further that an attorney's clients have a fundamental right of access to the courts, citing *Boddie* and *Winters,* and found that appellee's clients were deprived of this right of access through the operation of DR 7–109 C. The

rule, the court held, had no rational justification and was therefore unconstitutional under the fourteenth amendment.

We find the court's reliance on *Boddie* and *Winters* misplaced. The fundamental nature of the marriage relationship and the exclusiveness of the courts as a means for dissolving that relationship were central to the Court's decision in *Boddie.* Justice Harlan, writing for the Court, pointed out that the Court went "no further than necessary to dispose of the case before us" and did not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the due process clause of the fourteenth amendment. 401 U.S. at 382–83, 91 S.Ct. at 788. The Supreme Court has upheld a filing fee for indigents seeking a discharge in bankruptcy. *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). It held that since bankruptcy was a legislatively created benefit, no constitutional right of access to bankruptcy proceedings existed. In contrast to the fundamental rights at stake in *Boddie,* bankruptcy involves economic rights which the court held were not fundamental. The Court also based its decision in *Kras* on the availability of alternate means for the adjustment of legal relations with creditors. Since it found no fundamental interest at stake in bankruptcy, it held that the proper standard for reviewing applicable legislation was the existence of a "rational justification." 409 U.S. 444–47, 93 S.Ct. 631.

*Winters v. Miller, supra,* was decided two years before *Kras. Winters* upheld the right of access to a court by a plaintiff seeking damages for the infringement of rights guaranteed under the first amendment.

Here we have no denial of access—plaintiffs are in court and have already engaged in extensive litigation. Their claim is that the rules place an insuperable obstacle in the way of successful presentation of their position on trial. It may be conceded that litigation of difficult and complex matters

---

7. In *Wadmond,* the Supreme Court of New York and two of its Appellate Divisions were named as defendants and were held to be sua-

ble for injunctive relief. (Opinion by Judge Friendly.)

by persons with small individual stakes in the outcome may be aided and encouraged by elimination of the prohibition against the hiring of experts whose fees may be contingent upon the results. We are not convinced, however, that there is no danger of the inducement of false expert testimony by such contingency arrangements.

The legislature has made a judgment that the need for discouragement of contingent fee arrangements outweighs the obstacle to financing litigation which a ban on contingent fees may create. We cannot say that this legislative judgment is irrational. The extent of the obstacle and the weight to be given its existence when balanced against the likelihood of false testimony and unfair results from permitting the procurement of expert testimony by the offer of a stake in the outcome are matters of judgment best confided to legislative and judicial bodies of the state.

We think that the interest in treble damage antitrust claims of persons with little at stake individually is more closely akin to the legislatively created interest in the shedding of debt obligations through bankruptcy of *Kras* than to the fundamental interest of an individual in the marriage relationship which was before the Court in *Boddie.*

The New York rule is not analogous to a Virginia statute regulating the solicitation of legal business which the Supreme Court struck down in *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), cited by appellee. In contrast to the Virginia statute invalidated in *NAACP v. Button,* the New York disciplinary rule is specific, not subject to selective enforcement because of vagueness, and its effect on first amendment rights, if any, is remote. DR 7–109 C does not deny attorneys or their clients access to the courts—it merely forces attorneys and litigants to finance the payment of experts in a manner not related to the outcome of the litigation. Courts have for centuries possessed disciplinary powers incident to the administration of justice. *NAACP v. Button, supra,* 371 U.S. at 456, 83 S.Ct. 328 (Justice Harlan dissent-

ing). DR 7–109 C is a proper exercise of such a power.

We also reject appellee's argument that the incidental economic burden placed on some litigants by DR 7-109 C constitutes a violation of the equal protection clause of the fourteenth amendment. Strict scrutiny of a legislative classification is required for equal protection determination only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Classifications in the area of economics and social welfare have been held not to constitute such suspect classifications. *Ortwein v. Schwab,* 410 U.S. 656, 659, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In the absence of interference with a fundamental right of access or a suspect classification, the relevant standard of review is the rationality of the New York rule. *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 312, 96 S.Ct. 2562; *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

States have a compelling interest in regulating the conduct of professionals who practice within their borders. The interest in regulating lawyers is especially great because lawyers are essential for the functioning of the administration of justice. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). In New York the legislature has expressly provided that the judiciary has the power to regulate attorneys. *People ex rel. Karlin v. Culkin,* 248 N.Y. 465, 472–77, 162 N.E. 487 (1928); Judiciary Law § 90(2). Disciplinary Rule 7–109 C was promulgated to insure that judicial proceedings in New York were free of false testimony which might result if expert witnesses were paid on a contingent fee basis. Expert testimo-

ny, by its very nature, concerns areas of knowledge with which the ordinary juror and the court are unfamiliar, and perjured expert testimony is particularly difficult for a juror to detect. New York has adopted DR 7–109 C to lessen the likelihood of false expert testimony. The rule is not invalid because it cannot prevent all perjured expert testimony. New York may tackle a problem one step at a time. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). "[A court's] procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser . . . ." *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934).

Person has advanced arguments why it might be desirable to alter the present rule in order to facilitate litigation by less affluent litigants. He points out that cross-examination would reveal whatever financial stake a witness has in the outcome of litigation. He notes that experts often have ongoing business relationships with the parties who retain them and therefore, in an indirect sense, frequently have a stake in the outcome of litigation although their fee is not contingent and thus not covered by DR 7–109 C. Other experts, although retained on a "fixed fee" basis, often do not expect to receive payment unless the party for whom they testify is successful. These are factors which may indicate the desirability of legislative change, but they do not constitute sufficient grounds for invalidating the current canon or rule.[8]

New York Disciplinary Rule 7–109 C does not affect a fundamental right nor create a suspect classification. We hold that it has a sufficient rational basis to withstand a constitutional challenge under the equal protection and due process clauses of the fourteenth amendment.[9] The judgment is reversed and the complaint dismissed.

8. See *Recent Developments in Attorneys' Fees,* 29 Vand.L.R. 685, 710–16 (1976); F. Michelman, *Litigation Access Fees,* 1973 Duke L.J. 1153, 1160.

9. We do not reach any question which might be raised were the state rules arguably in conflict with the federal rules.