OPINION OF THE COURT
Alexander Berman, J.
In 1968, Parklane Hosiery Co., Inc. went "public.” In 1974, it went "private.” In 1978, the litigation arising out of its brief life continues on two fronts and promises to drag on for a substantial period of time.
Pending in this court is a consolidated appraisal proceeding brought pursuant to section 623 of the Business Corporation Law brought by two groups of dissenting shareholders. In addition, two Federal court actions were instituted, one by the Securities and Exchange Commission against Parklane Hosiery Co., Inc. and its president, Herbert N. Somekh (422 F Supp 477, affd 558 F2d 1083), and Shore v Parklane Hosiery Co. (USDC, SD, NY, 74 Civ 4986).
After a trial before Judge Duffy in the SEC case, it was found that the overriding purpose of the transaction (going private) was to enable the major shareholder to repay his personal indebtedness, and that there had been material omission in the proxy material circulated (see Securities & Exch. Comm. v Parklane Hosiery Co., supra). Using these findings, the Second Circuit reversed a denial of a motion for summary judgment brought by the plaintiffs in the stockholders’ suit for damages brought by Shore and remanded for an assessment of damages (see Shore v Parklane Hosiery Co., 565 F2d 815).
Here, the proceedings before the appraiser have been ongoing since June of 1975. Some 11 witnesses have been called on behalf of petitioners. Three of these witnesses are involved in one phase of these motions. They are Dermott Noonan, Richard Pluschau (certified public accountants) and Nathanial S. Weiner (a securities analyst). All three are classified as expert witnesses.
I have before me two motions: (a) (1) by respondent Park-lane, seeking to strike the testimony thus far given by petitioners’ three expert witnesses on the ground that their testimony has been given on the basis of illegal compensation *935 arrangements contingent upon the outcome of such proceeding; (a) (2) for an order staying this proceeding until the trial of the related Federal class action for damages presently pending in the Federal court; and (b) petitioners’ motion for an order requiring respondent to post a bond and for the payment of interim allowances.
The first request for relief I will consider is respondent’s motion to strike the testimony of Noonan, Pluschau and Weiner, the accountants hired by petitioner to testify at the proceedings before the appraiser, on the grounds that the testimony on cross-examination reveals that their fees are "contingent upon the outcome of the case”, a practice counsel argues is prohibited by virtue of Disciplinary Rule 7-109 (C) of the Code of Professional Responsibility (McKinney’s Cons Laws of NY, Book 29, Judiciary Law, Appendix, p 499). While a great deal of the extensive briefs submitted deal with the question of whether the payment agreements are, in fact, contingent, I need not make a determination with respect thereto. I have assumed, arguendo, for the purpose of this decision, that the fees, if any, their accountants will be paid are dependent upon the outcome of this litigation.
The issue before me is a limited one. It does not involve the validity of DR 7-109 (C) (see Person v Association of Bar of City of N. Y., 414 F Supp 139; revd 554 F2d 534, cert den 434 US 924); or its merits (see 86 Yale LJ 1680); the question of ethics and censure (see Matter of Imperatori, 152 App Div 86; Matter of Schapiro, 144 App Div 1) or the enforceability of the contingent agreements (Lyon v Hussey, 31 NYS 281; Laffin v Billington, 86 NYS 267; Hough v State, 145 App Div 718; Bergoff Detective Serv. v Walters, 239 App Div 439). My determination does not involve the propriety of calling an expert witness originally employed by an adversary (Maglione v Cunard S. S. Co., 30 AD2d 784; Gnoj v City of New York, 29 AD2d 404; Matter of City of N. Y. [Brooklyn Bridge], 50 Misc 2d 478). Nor need I pass upon, or make comment on, the probative value of the testimony or what the effect would be if the nature of the fee arrangement were not known prior to determination.
The sole question before me at this time is — are experts who are being paid a contingent fee incompetent to testify in the proceeding, the result of which will determine the amount of their fees? In my opinion, the answer must be, "No.”
Obviously, for me to determine that a person may not *936 testify, there must be a reason for doing so. Respondent argues that DR 7-109 taken together with the Second Circuit’s holding in Person v Association of Bar of City of N. Y. (supra), the specialized nature of expert testimony and in an argument, which is indicative of a legal chauvinism, a presumed inclination on the part of an expert to lie in order to protect a fee, provide just such a reason based upon "public policy.” Put another way, since an expert’s knowledge is specialized and not within the trier of the facts’ realm of experience, the fact that he, the expert, has an interest in the outcome of the litigation should be sufficient to preclude him from giving testimony.
That an interest in the outcome of a litigation, standing alone, does not render a person incompetent to testify, is clear. (See Coleman v New York City Tr. Auth., 37 NY2d 137, 142.) The common-law testimonial incapacity foundéd om interest (which may, at least as far as the parties were concerned, have been the last remnants of the right to a "wager of law,” [see 2 Wigmore, Evidence (3d ed), § 575, p 681]) was abolished in this State as to interested persons in 1848 (see L 1848, ch 379) and parties in 1857 (see L 1857, ch 353). That subject is at present covered by CPLR 4512, which provides: "Competency of interested witness or spouse. Except as otherwise expressly prescribed, a person shall not be excluded or excused from being a witness, by reason of his interest in the event or because he is a party or the spouse of a party.” The only remaining vestige of the common-law exclusion in this State can be found in CPLR 4519, the so-called "deadman’s statute,” the philosophy behind which has been subject to much criticism (see 2 Wigmore, Evidence [3d ed], § 578). It is noteworthy that elimination of even this venerable anachronism was sought by the Civil Practice Act’s revisors (see 2 NY Advisory Committee Rep 260), a recommendation which was not followed, not because of a lack of merit, but rather because it was felt elimination as a part of a revision was inappropriate (see 5 NY Advisory Committee Rep 794).
I find the argument that canon 7, and more specifically DR 7-109 (C) of the Code of Professional Responsibility, which reads as follows:
"A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case. But a *937 lawyer may advance, guarantee, or acquiesce in the payment of:
"(1) Expenses reasonably incurred by a witness in attending or testifying.
"(2) Reasonable compensation to a witness for his loss of time in attending or testifying.
"(3) A reasonable fee for the professional services of an expert witness” has limited the applicability of CPLR 4512 or in any way diminished the public policy behind it, unconvincing despite what would appear to be the implications of the holding in Person (554 F2d 534, supra). That decision dealt solely with the question of the disciplinary rules’ constitutionality as applied to lawyers and its indirect effect on litigants. It is true that the Person opinion indicated (p 538) that this State’s “legislature has made a judgment that the need for discouragement of contingent fee arrangements outweighs the obstacle to financing litigation which a ban on contingent fees may create. We cannot say that this legislative judgment is irrational.” However, this reference to a "legislative judgment” is somewhat misleading in that it would seem to imply that there has been a direct legislative pronouncement in this regard. Such is not the case. Subdivision 2 of section 90 of the Judiciary Law vests the Supreme Court with the power and control over lawyers and authorizes the Appellate Division to censure, suspend or disbar lawyers who are guilty of misconduct. Misconduct is defined by the Appellate Division rules (22 NYCRR 603.2, 1st Dept; 22 NYCRR 691.2, 2d Dept) as including violations of the disciplinary rules of the Code of Professional Responsibility adopted by the State Bar Association of which DR 7-109 (C) is part. This "legislative judgment” with respect to contingent fees may be said to be indirect, and certainly cannot be said to in any way limit the applicability of CPLR 4512. In this regard, it is significant that the appellants in Person represented by the Attorney-General of this State argued in their brief that DR 7-109 (C) "does not and did not keep plaintiff from arranging with an expert to testify on a contingent fee basis.” (See Person v Association of Bar of City of N. Y., supra, p 536, n 6.) Certainly, this is some indication that DR 7-109 (C) was not intended to be a statement of strong public policy against receiving such testimony. In my opinion, the holding in Person should be interpreted as upholding the right of the Appellate Division, through its disciplinary powers over attorneys, to indirectly limit the *938 provisions of CPLR 4512 and not as providing an exception thereto.
Counsel have been unable to furnish me with any rulings directly on point. The cases relied upon by respondent involve issues not before me, and while counsel for petitioners argue that Marine Midland Trust Co. of N. Y. v Forty Wall St. Corp. (13 AD2d 118, affd 11 NY2d 679) should control, the holding there is persuasive at best since it involved a situation where the fees were contingent only insofar as they were to be awarded by the court. While it was noted in the decision that there had been a "long-standing, unarticulated acquiescence in payment of contingent fees to experts” it was further noted that the fee of the experts involved "was not fixed between them and the parties in any sum or percentage dependent upon success” (Marine Midland Trust Co. of N. Y. v Forty Wall St. Corp., supra, pp 126-127).
The nature of an expert’s fee arrangement is relevant only as to his credibility, not his competency to testify (see Coleman v New York City Tr. Auth., 37 NY2d 137, supra). To my mind, the danger of a contingent fee in cases such as this lies not in the fact that it is contingent, but in the nondisclosure of that fact. As the court in Matter of Schapiro (144 App Div 1, 11, supra), a case involving disbarment, noted: "Having made such agreements his [the attorney’s] obligation to the court and to the public required that he should have called the attention of the court to the fact that such agreements existed so that the jury in considering the testimony of the physician could understand that he was interested in the recovery.”
Up to this point, I have discussed only the legal aspects of this motion. I would be remiss if I did not make mention of the rather unique factual circumstances. These experts were hired at a time when DR 7-109 had been held to be unconstitutional (see Person v Association of Bar of City of N. Y, 414 F Supp 139, supra). There is nothing whatsoever present in this record to indicate counsel for petitioner was acting in anything other than good faith when they engaged the experts, or that they are not acting in a straightforward manner. The appraiser is a skilled and able attorney with many years experience, who is perfectly capable of evaluating the testimony in light of all the surrounding circumstances. To now deprive petitioners of the opportunity to have the testimony of these witnesses considered would be to punish them *939 for what hindsight has shown to be a mistake of judgment on the part of their attorneys in relying on a lower court holding. Because this matter is still pending before the appraiser, I have attempted to limit my discussion to the principles involved. Nothing said herein should be considered as reflecting on the credibility of the witnesses or the weight to be given their testimony.
Respondent’s motion to strike is denied.
Respondent also seeks to stay this action pending determination of the Federal court class action suit brought against respondent and its officers for damages arising out of misrepresentations made in the prospectus issued at the time of the merger (Shore v Parklane Hosiery Co., USDC, SD, NY, 74 Civ 4986, supra). The stay is sought on the grounds that a finding here as to fair market value "might collaterally estop” respondent from disputing the value in the Federal action, thereby extinguishing its constitutional right to a trial of the issue of damages by a jury in that action.
Faced with the fact that it had previously vigorously and successfully opposed an application for a stay brought on by petitioner Shore on the grounds that the Federal action was pending (see mem dec, Feb. 15, 1977, Young, J.), respondent, nevertheless, now seeks to explain away his inconsistent positions by asserting a "change” in the law with respect to the doctrine of collateral estoppel in the Federal courts. Briefly, the argument is this: When the prior motion by Shore was made, Rachal v Hill (435 F2d 59, cert den 403 US 904) was the law, and it held the right to a jury trial could not be destroyed by the application of collateral estoppel. The Second Circuit’s holding in Shore v Parklane Hosiery (565 F2d 815, supra) wherein the court held that the finding of misrepresentation made by Judge Duffy in the SEC action was res judicata on the issue of liability in the shareholders’ suit for damages represented an unprecedented departure from the rationale of Rachal. This "change in the law,” respondent contends, precipitated this motion and is in keeping with the procedure set forth in Goldman, Sachs & Co. v Edelstein (494 F2d 76) of seeking a stay of the nonjury proceeding.
This argument must fail for two reasons. The first being that the court in Shore had no hesitancy in depriving Park-lane and the individual defendants of their right to a jury trial despite the holding in Rachal. The second being that as early as 1973 the Second Circuit had indicated its displeasure *940 with the holding in Rachal when it indicated, "[W]e are not at all sure Rachal was correctly decided” (see Crane Co. v American Std., 490 F2d 332, 343, n 15). As it noted in Shore (supra, p 823): "Our disagreement with the Fifth Circuit’s decision in Rachal should come as no surprise to those familiar with some of our recent decisions”. Likewise, Goldman, Sachs was decided prior to respondent’s opposition to staying this action.
Therefore, respondent’s rights, if any, to seek a stay of this action have been waived by their failure to do so before this.
My decision with respect to waiver makes it unnecessary to consider the merits of a stay.
Before leaving this point that both counsel seem to have encountered difficulties with respect to anticipated holdings of appellate courts, I can sympathize with them since, on occasion, I have had the same problem.
The motion insofar as it seeks a stay is denied.
Petitioner’s motion insofar as it seeks an order requiring respondent to post security is denied, as is the request for the payment of interim allowances. The moving papers are insufficient to establish a need for the requested relief.