## In re SCHAPIRO.

(Supreme Court, Appellate Division, First Department.   April 7, 1911.)

1. CONTRACTS (§ 129*)—VALIDITY—PUBLIC POLICY.

Under Pen. Law (Consol. Laws 1909, c. 40) § 810 et seq., punishing the using of fraudulently altered evidence, attempting to procure one to give false testimony, or to withhold true testimony, a contract between an attorney employed to prosecute an action for a personal injury for a contingent fee, and a physician who attended the person injured, whereby the attorney agreed to pay the physician for services as a witness a specified sum if the action was won, entered into before the physician gave his testimony, is contrary to public policy, as inducing perjury.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 617; Dec. Dig. § 129.*]

2. ATTORNEY AND CLIENT (§ 42*)—MISCONDUCT OF ATTORNEY.

An attorney employed to prosecute a personal injury action for a contingent fee agreed to pay a physician who attended plaintiff compensation

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for services in connection with the case if the action was won. The physician had previously made a statement to the attorney as to the facts to which he would testify, but as the time of the trial approached the physician threatened, unless he was given an interest in the recovery, to testify to a state of facts injurious to plaintiff's case, and, to prevent the physician from carrying out his threat, the attorney made the contract. During the trial the physician, in the presence of the attorney, denied any interest in the case, and the attorney remained silent. *Held*, that the attorney was guilty of misconduct justifying disbarment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

Petition by the New York County Lawyers' Association for the disbarment of Louis E. Schapiro, an attorney. Judgment of disbarment rendered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, CLARKE, and DOWLING, JJ.

Hiram Thomas, for petitioner.
Harry A. Gordon, for respondent.

INGRAHAM, P. J. The New York County Lawyers' Association presented a petition to this court asking for the disbarment of the respondent.

The charges in the petition are as follows: The respondent brought an action for one Rosenblatt in the United States Circuit Court for the Southern District of New York to recover damages for personal injuries alleged to have been caused by a firm consisting of Gould & Eberhardt. A Dr. Dawbarn had attended the respondent's client professionally for the injuries alleged to have been received, and just before the trial on February 14, 1908, and after the doctor had been subpœnaed, the respondent executed and delivered to Dr. Dawbarn the following instrument, with the intention at the time of refusing compliance with it:

"For value received by myself I hereby agree to pay Dr. R. H. M. Dawbarn for services heretofore and hereafter rendered in connection with the case of Rosenblatt v. Gould & Eberhardt, the same to equal the amount paid to the chief attorney who tries this case for the plaintiff.

"Said money to be paid to Dr. Dawbarn on the same day and place as the said attorney.　　　　　　　　　　　　　　　　　　　Louis E. Schapiro.

"Witness:
"Jennie Irvine, 105 W. 74th St."

That following the execution and delivery of this agreement the case of Rosenblatt v. Gould & Eberhardt came on for trial in the United States Circuit Court. Dr. Dawbarn testified on behalf of the plaintiff concerning the latter's injuries, and such trial resulted in a verdict in favor of the plaintiff for the sum of $2,600. The case was subsequently settled by the payment by the defendant to the respondent's clients of the sum of $2,440, of which the respondent received for his services under an agreement with his client the sum of $1,220. That the respondent had paid to Mr. Feltenstein, who tried the case for the plaintiff as counsel, the sum of $420 for his services as such counsel. There was a further charge that Dr. Dawbarn testified upon

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the trial of that action upon cross-examination that he had no interest in the case, and had no understanding as to what he would be paid for testifying; that Dr. Dawbarn's testimony was given in the presence of the respondent, who was the attorney of record in the case, and the action was allowed to go to the jury upon his testimony. It is further alleged that, the respondent having refused to pay Dr. Dawbarn the amount provided for by this agreement, the doctor brought an action against the respondent in the Municipal Court of the city of New York. The sixth paragraph of the complaint in that action set out this agreement in full, and it was sought to recover under it the amount that the respondent had paid to Feltenstein as counsel in the case. The respondent interposed a verified answer in that action, first denying the allegation of the sixth paragraph of the complaint which alleged the making of this agreement, and then for a separate defense alleging:

"That, prior to the alleged delivery of the writing referred to in paragraph marked 'Sixth' of said complaint, a subpœna was duly issued out of the District Court of the United States for the Southern District of New York at the instance of this defendant, as attorney for Kalman Rosenblatt, directed to the plaintiff herein, and commanding him to appear and attend at the trial of the action of the said Kalman Rosenblatt against Gould & Eberhardt."

That, after this subpœna had been served upon him, he had an interview with the doctor, in which the latter threatened to testify against the plaintiff, and in fear and apprehension that the doctor would carry out such threat, the carrying out of which would result to the prejudice of the said Rosenblatt in the prosecution of his action and "incidentally in the prejudice to and reduction of this defendant's compensation, unless writing was given and for no other consideration whatsoever, this defendant signed and delivered the said writing." Upon the trial of this action in the Municipal Court the doctor obtained a verdict against the respondent, which judgment upon appeal to the Appellate Term was affirmed.

The respondent in his answer in this proceeding, after alleging his inexperience, alleges: That in the early part of January, 1908, Dr. Dawbarn had stated to the respondent what he would testify to upon the trial. That on Janaury 22, 1908, the respondent served Dr. Dawbarn with a subpœna to appear at the trial. On January 23, 1908, the respondent had an interview with Dr. Dawbarn, when the doctor requested the respondent to give him an agreement to the effect that upon the recovery of a verdict in the case of Rosenblatt v. Gould & Eberhardt the respondent would pay to the doctor a sum equal to one-third of the sum rendered by the jury. That respondent stated that he was to receive one-half of the verdict, and refused to accede to Dr. Dawbarn's request. That Dr. Dawbarn then stated that, if the respondent would not give him such a writing, he would appear upon the trial of the action, and give testimony damaging to the plaintiff; that, if he did not obtain from the respondent the agreement which he sought, he would testify upon the trial that the records of the hospital were correct, and that the plaintiff in the action was then suffering from tuberculosis of the leg which made the amputation necessary—in effect, destroying the plaintiff's cause of action. That the

doctor further stated that that was the usual proceeding in accident cases, that in every case he had exacted such an agreement, and the respondent was finally induced to sign a paper which Dr. Dawbarn still has in his possession, which agreement is set forth in the answer as follows:

"In consideration of the medical and professional services rendered by Dr. Robert H. M. Dawbarn to one Kalman Rosenblatt, I, the undersigned, hereby agree to pay to said Dr. Dawbarn one third of the amount of any verdict that may be rendered in the case of Rosenblatt v. Gould & Eberhardt, less customary court expenses, but no bill for other legal services is to be charged against Dr. Dawbarn.                                      Louis E. Shapiro."

On February 14, 1908, the respondent had another interview with Dr. Dawbarn, at which he told the respondent that he had lost the writing which had been given in January, and he wished a new writing from the respondent. The respondent demurred to giving this new writing, and the doctor again repeated his threats as to his testimony, and stated that he, the doctor, wanted a writing giving him a sum equal to the amount which the respondent would pay the counsel for trying the case. The respondent then alleges that he knew that if the doctor carried out his threat, and testified falsely as he then stated he would, that there was no prospect of recovering in the action, because the respondent was without means of establishing the true situation and the condition of his client. Finally, the paper alleged in the petition was made out, and the respondent signed the same and delivered it to the doctor, and subsequently the doctor procured from Rosenblatt, the respondent's client, his signature to the same instrument. The respondent further alleges that he subsequently called the doctor on the telephone and repudiated these papers, and said he would have nothing more to do with his compensation; that he then consulted Mr. Feltenstein, who advised him that his conduct had been proper. The respondent then cites in his answer the testimony of the doctor on cross-examination on the trial, in which the doctor testified that he had no understanding as to what his pay should be; that he was going to take whatever was given him. The respondent further admits that in the Municipal Court action he testified to the facts stated in his answer; that the justice before whom the case was tried decided against the respondent; that respondent appealed from that judgment to the Appellate Term, where the judgment was affirmed; and that he had not paid the judgment. He further alleges that the charge that he gave Dr. Dawbarn the agreement of February 14, 1908, with the intention of never carrying the same out was absolutely unfounded. Annexed to the answer is the affidavit of Moses Feltenstein, the attorney at law who tried the Rosenblatt case in the United States Circuit Court as counsel for the respondent's client.

In reply to the respondent's answer the petitioner submits the affidavit of Dr. Dawbarn, denying the respondent's allegations as to the threats that it is alleged the doctor made to obtain the agreement, denying other statements of the respondent, and attempting to explain his testimony as to his compensation given on the trial of the action in the United States Circuit Court. Other affidavits were also submitted denying some of the respondent's allegations in his answer.

There was also submitted a copy of the stenographer's minutes in the Municipal Court action brought by Dr. Dawbarn against the respondent. Upon that trial the respondent testified that he subpœnaed Dr. Dawbarn as a witness prior to the time this instrument of February 14th was executed; that at the interview on February 14th the doctor said that he had lost the prior instrument executed on Jaunary 23, 1907, and for that reason he wished a new agreement; that respondent then said to the doctor, "You are under subpœna," to which the doctor replied:

"I know I am. I go, but you know what the consequences will be. You know of the record in the hospital. I will go to straighten that out. If you compel me, under subpœna, to go, it will be damaging to your client."

And that this remark referred to what had been said by Dr. Dawbarn as to his testimony prior to signing the agreement of January 23, 1908. The respondent further testified: That on February 14th the doctor said:

"You know, Mr. Schapiro, what the record is down at the hospital, and what I told you the last time that you gave me the first contract, that, unless I am seen right and given the writing which I lost, I will testify according to the record."

That after this conversation the respondent went into the sitting room and drew up the instrument of February 14th.

It is thus conceded by the respondent that he signed this instrument agreeing to pay to a witness upon whose testimony he depended to sustain his cause of action the same amount paid to the chief attorney who tried the case for the plaintiff; that, having delivered this agreement to the witness, he called the person with whom he had made the agreement as a witness on the trial of the action to which the instrument referred; that he based the right to recover upon the testimony of such witness, and heard the witness testify on cross-examination in answer to a question as to what the doctor's interest in the case was that he had had no interest in the case; that he presumed he would be paid, but how much he did not know; that his testimony was not given because he expected to be paid; that he had no understanding as to what his pay should be; that he was going to take whatever was given him; that he did not know whether he would be paid if there was no verdict in the case; that there was no definite understanding, without calling the attention of the court or the witness to the agreements that had been made, and which the witness had in his possession at the time. He then, when sued on the agreement, testified that it was executed and delivered because the proposed witness had threatened to give testimony which would destroy the plaintiff's case, and also destroy any chance that he had of receiving a fee for the services that he had rendered in the case, and to prevent the witness from testifying as he threatened to do against his client upon the trial. The respondent states that he stated to the doctor that he had an agreement with his client by which he was to be paid 50 per cent. of the recovery that he obtained in the action about to be tried, as his fee for services rendered. This client had been a charity patient in the hospital, and it was apparent that the compensation to

be paid the lawyers and witnesses depended upon the plaintiff in that action obtaining a judgment, and that this was understood by all the parties who took part in this transaction. The hospital records disclosed facts which would seriously affect the plaintiff's right to recover, and the respondent alleges that the testimony of the doctor as to the facts disclosed upon the operation that the doctor had performed upon the plaintiff, in that action, was essential to a recovery. That being the situation, he first drew up, executed, and delivered to the doctor an agreement to pay him one-third of the recovery and subsequently drew up and delivered to the doctor another agreement to pay him the same fee that he should pay to the counsel who had tried the case. Thus a person who was to be examined as a witness received from the attorney who expected to call him an agreement by which the attorney agreed to pay him if he would testify a substantial portion of the recovery which would result from the testimony this witness was to give upon the trial, and the bald question that we have presented is whether the making of such an agreement between an attorney who represented a party to an action and a person who was to be called as a witness to prove the cause of action is professional misconduct.

The law recognizes a contract between an attorney and his client by which the attorney is to receive for the services that he renders in an action a sum of money contingent upon success, and the law also allows a party to an action who is vitally interested in the result of the trial the right to give testimony to be considered by the court or jury in determining the questions at issue. The interest of a party to an action giving such testimony is, however, apparent from the nature of the case, and the weight to be given to such testimony is to be considered in view of the interest of the party testifying. But, when other witnesses are called to substantiate a claim or defense, they occupy an entirely different position. They appear as witnesses, and, in the absence of proof of facts showing interest in the case, their testimony stands on a very different plane from that of interested witnesses, whose testimony is allowed, but whose interest in the result of the controversy leaves their credibility a question to be determined by the court or jury. [1] Article 76 of the penal law prescribes penalties for using forged or fraudulently altered evidence or inducing another to give false testimony on the trial. Thus by section 810 a person who upon any trial or other proceeding authorized by law offers or procures to be offered in evidence as genuine a book, paper, or other instrument in writing, knowing the same to have been forged or fraudulently altered, is guilty of a felony. Section 811 makes it a felony to make or prepare any false record, instrument in writing, or other matter or thing with intent to produce it or allow it to be produced in evidence. Section 813 makes a person guilty of a misdemeanor who, without giving, offering, or promising a bribe, incites or attempts to procure another to commit perjury or to give false testimony as a witness, though no perjury is committed or false testimony given, or to withhold true testimony. By section 814 a person who practices any deceit or fraud or uses any threat, menace, or violence with intent to prevent any party to an action or proceeding from

obtaining or procuring any book, paper, or other thing which might be evidence or act procuring the attendance or testimony of any witness therein or with intent to prevent any person having in his possession any book, paper, or other thing which might be evidence in such suit or proceeding, or to prevent any person being cognizant of any fact material thereto from producing or disclosing the same, is guilty of a misdemeanor. Section 1632 provides that a person who willfully procures or induces another to commit perjury is guilty of subornation of perjury.

It is the object of these provisions to surround the giving of testimony with all the safeguards possible to prevent the giving of false testimony upon a trial or other judicial proceeding, and yet every one who is familiar with the administration of justice has constantly called to his attention the prevalence of perjury by parties and witnesses in judicial proceedings.

If agreements between attorneys and witnesses upon whose testimony the clients' cases depend to share in the attorneys' fees for conducting the prosecution are to be approved, it will be almost impossible to prevent perjury and the violation of these provisions of the penal law to which attention has been called. The only safeguard lies in the fact that the attorney is an officer of the court upon whom rests the responsibility of preventing false or perjured testimony and calling only those witnesses whom he believes to be truthful witnesses testifying to facts as they understand them to be, and there can be no greater professional misconduct than for an attorney and counselor at law to make agreement by which a witness is to share in the result of the action, and then calling the witness and offering his evidence to the court and jury as testimony to influence them in the determination of the questions submitted. A witness who demands and receives compensation or a promise of compensation for giving his testimony is necessarily a discredited witness, and an attorney and counselor at law who knowingly makes an agreement with a witness, by which he agrees to pay a witness a sum of money or an interest in the recovery as compensation for the giving of particular testimony rather than other testimony; or in consequence of an express or implied threat to testify against a party proposing to call him as a witness, unless he receives compensation from the party proposing to call him, is making an agreement which is plainly contrary to public policy, and one which is subversive of the orderly and efficient administration of justice. We are aware that witnesses who are to be called to give expert testimony which involves the special knowledge and skill of the witness and often require examination and study upon a particular branch of science are from the necessity of the case justified in demanding and receiving compensation for the time and labor devoted to the investigation of the particular science about which they are to testify, but this practice has been allowed from the necessity of the case and the inability of courts and juries to determine questions without the benefit of such expert knowledge. And there has grown up a habit in cases where witnesses who are in impoverished circumstances can be paid by the party calling them for the time actually lost in attending at court or before the tribunal where they are to

give testimony. But in all these cases the witness receives compensation, not for swearing to a particular state of facts, but for the time and labor expended in the investigation of an abstruse subject about which testimony is to be given or the time lost in attending at the tribunal where the testimony is to be given. Such an agreement, however, can never be valid where the amount to be paid is to depend upon the testimony that he is to give, and where his right to compensation depends upon the result of the litigation in which he testifies. It is apparent, therefore, that the mere making of such an agreement as the respondent admits he made in this case by which a witness that he intended to call and did call to prove his case should have a substantial portion of the recovery, if one was obtained, is a most serious professional misconduct demanding the strongest condemnation.

[2] If we accept the respondent's statement of the conditions under which this contract was made, his conduct becomes the more serious and indefensible. He had a witness who made a statement to him as to the facts to which he would testify. As the time of the trial approached, this witness threatened, unless he was given an interest in the recovery, to testify to a different state of facts which would be injurious to the respondent's client's cause of action. To prevent the proposed witness carrying out his threat, and testifying to facts which prevent a recovery, the respondent made a contract to pay to the witness a material part of the recovery if one was obtained. It would seem to be quite immaterial upon this investigation which was the true version—that which the proposed witness had first stated or that which he threatened to testify to unless his demand was complied with—although it might be material as to whether the respondent was guilty of a crime under section 813 of the penal law. But to give or offer to give a consideration to a proposed witness to testify in a particular way upon a trial whether the particular way in which the witness was to testify was true or not is clearly a violation of the duty of an attorney and a breach of his obligation to the court and to the state whose officer he is. Whether he made this agreement with intent to perform it or not is immaterial. He made it to induce the witness to testify to particular facts where, according to the respondent's statement, the witness had threatened to testify differently, unless he was paid for the testimony that he was to give. The claim that the respondent repudiated the contracts by a simple message over the telephone is no possible defense. The offense was in making the agreements. The repudiation was evidently an afterthought. It was not believed in the action brought by the doctor upon the contract, and the doctor was allowed to retain the instruments, was called as a witness with them in his possession, and testified to the facts which he said he would testify to if the instruments were given. And then the respondent with knowledge of the fact that the witness had these instruments in his possession, and with knowledge that he had agreed to give to the witness a substantial part of the recovery if one was obtained, allowed the witness to swear that he had no interest in the recovery, and had no understanding as to what his pay was to be. Having made such agreements, his obligation to the court and to the public required that he should have called the attention of the court

to the fact that such agreements existed, so that the jury in considering the testimony of the physician could understand that he was interested in the recovery. We are therefore forced to the conclusion that the respondent was guilty of the most serious professional misconduct, if he was not guilty of a crime, under the provisions of the penal law before cited.

The question, then, is what the punishment should be. The serious aspect of this case is the way that the respondent has treated this charge. Both in the Municipal Court action and in this proceeding, he seems to have considered as a defense to this charge that this proposed witness exacted this agreement as a condition to his testifying to the facts required by the respondent and his client, and the fact that a witness made a demand for compensation for giving testimony in a particular way which would be favorable to the respondent and his client with a threat that he would testify to a different state of facts if the agreement for compensation was not given seem to be looked upon as a complete defense to a charge of professional misconduct for making such an agreement. It is the attitude of the respondent in making the agreements and in his answer to these charges that forces us to the conclusion that he is not fit to remain a member of a profession the proper performance of whose duties requires honesty and integrity.

The testimony given by Dr. Dawbarn was in an action tried in the United States Circuit Court, and, in view of that testimony, the facts as they now appear by his own affidavit should be considered by the United States attorney; and the petitioner should, we think, call his attention to the facts appearing upon this application.

It follows, therefore, that upon the respondent's own statement of his connection with this transaction he must be disbarred, and the application is therefore granted. All concur.