[925 NYS2d 103]

BESSIE CALDWELL et al., Appellants, v CABLEVISION SYSTEMS CORPORATION et al., Defendants, and COMMUNICATIONS SPECIALISTS, INC., Respondent.

Second Department, May 31, 2011

## APPEARANCES OF COUNSEL

*Schlemmer & Maniatis, LLP* and *Profeta & Eisenstein* (*Fred R. Profeta, Jr.* of counsel), New York City, for appellants.

*Wilson Elser Moskowitz Edelman & Dicker, LLP* and S*haub, Ahmuty, Citrin & Spratt, LLP* (*Christopher Simone* and *Scott Fusaro* of counsel) Lake Success, for respondent.

## OPINION OF THE COURT

SKELOS, J.P.

A party who calls a witness to testify to facts within his or her knowledge is required by statute to pay that witness, inter alia, $15 for every day of his or her attendance at trial (*see* CPLR 8001). The question presented on this appeal is whether payment voluntarily made to a fact witness, far in excess of that mandatory witness fee, rendered the witness's testimony inadmissible or, alternatively, warranted a specific jury instruction pertaining to potential bias. We hold that, while the substantial payment made by the defendant Communications Specialists, Inc. (hereinafter the defendant), to a fact witness in this case did not require exclusion of the witness's testimony, the trial court failed to adequately charge the jury regarding the suspect credibility of factual testimony by a paid witness. Under the circumstances of this case, however, we find that the error was not prejudicial and, thus, reversal is not required.

The defendant was contracted by Cablevision Systems Corporation to install a high-speed fiber-optic cable underneath Benefield Boulevard in Peekskill. To install the cable, the defendant cut a trench, two feet deep and four to five inches wide, which extended more than 3,000 feet along Benefield Boulevard. Additionally, the defendant dug, along the trench, a series of "test pits," approximately one-foot wide, to determine the location of existing underground utility lines.

The plaintiffs' home is located on Benefield Boulevard. On October 11, 2006, at approximately 10:00 P.M., the plaintiff Bessie Caldwell (hereinafter the injured plaintiff) took her 100-pound dog for a walk during a heavy rainstorm. As was her daily custom, the injured plaintiff crossed Benefield Boulevard from her driveway and walked with the dog on the sidewalk for a short distance. As she was walking back across Benefield Boulevard toward her driveway, the injured plaintiff tripped and fell in the road, allegedly sustaining injuries. At the time of the injured plaintiff's accident, the defendant had previously dug and backfilled the trench and test pits on Benefield Boulevard, but the road had not yet been permanently repaved.

The injured plaintiff and her husband, suing derivatively, subsequently commenced this action alleging, inter alia, that the defendant failed to properly backfill the trench and test pits, and had failed to adequately cover the trench and test pits with a temporary resurfacing material. According to the plaintiffs, the defendant had thereby created a dangerous condition on Benefield Boulevard which was the cause of the accident.

The action proceeded to trial, at which the injured plaintiff testified that she fell when she tripped on a "dip" in one of the test pits along the trench. To rebut this testimony, the defendant called as a witness Dr. Barry Krosser, an orthopedic surgeon who had examined the injured plaintiff in an emergency room after the accident. Dr. Krosser was called during the liability phase of the trial solely to testify as to the description of the accident given to him by the injured plaintiff and recorded in his consultation note. Dr. Krosser's consultation note was admitted into evidence as a business record. Based upon the note, as opposed to his independent recollection, Dr. Krosser testified that when he evaluated the plaintiff, she indicated to him that she "tripped over a dog while walking . . . in the rain." Dr. Krosser further testified that he was appearing by virtue of a subpoena served upon him by defense counsel, and that the defendant was compensating him for his lost time in the sum of $10,000. The plaintiffs' counsel cross-examined Dr. Krosser regarding this payment, without limitation. Dr. Krosser indicated that, in cases in which he had previously testified as an expert, he had charged a fee, since he would otherwise have been seeing patients or performing surgery.

The plaintiffs' counsel moved to strike Dr. Krosser's testimony on the ground that it was improper for the defendant to have paid $10,000 to a fact witness. Alternatively, the plaintiffs' counsel sought a jury instruction pertaining specifically to the payment. The defendant's counsel opposed the motion, asserting that the defendant was entitled to compensate Dr. Krosser for his time away from his practice "[j]ust as if he was an expert coming in" to testify. While the trial court ruled that both counsel would be permitted to address Dr. Krosser's compensation in their summations, it otherwise denied the plaintiffs' motion.

Upon deliberation, the jury concluded that the defendant had been negligent, but that its negligence was not a substantial factor in bringing about the injured plaintiff's accident. Accord-

ingly, upon an order denying the plaintiffs' motion pursuant to CPLR 4404 (a) to set aside the verdict as contrary to the weight of the evidence, a judgment was entered in favor of the defendant and against the plaintiffs dismissing the complaint insofar as asserted against the defendant. On appeal from the amended judgment, the plaintiffs contend that Dr. Krosser's testimony should have been stricken or, alternatively, that the jury should have been specifically instructed as to the potential bias created by the $10,000 payment made to the witness. We agree with the alternative contention.

Pursuant to statute, "[a]ny person whose attendance is compelled by a subpoena" is entitled to receive "attendance fees" in the amount of $15 for each day of attendance at trial, and travel expenses in the amount of 23 cents per mile (CPLR 8001 [a]). The plain language of the statute mandates payment of the fees set forth therein, but does not expressly prohibit voluntary payments made in excess of that fee schedule.

Nonetheless, the propriety of such payments is questionable from a public policy standpoint. "[T]he giving of testimony as to facts within one's knowledge is a matter of public duty" (*Alexander v Watson*, 128 F2d 627, 630 [1942]); it is an "inherent burden of citizenship," which requires no compensation (8 Wigmore, Evidence § 2202, at 136 [McNaughton Rev 1961]; *see Davis v McDaniel*, 60 Misc 2d 390, 393; 7 Lord, Williston on Contracts § 15:6 [4th ed]). While CPLR 8001 mitigates to a certain extent the burden of this public duty, this Court long ago held that

> "[w]here a witness who is not interested in the result of the controversy resides within this State, and is amenable to process therein, an agreement to compensate him in an amount in excess of the legal fees for attending as a witness and testifying only as to facts within his knowledge, is contrary to public policy and void" (*Clifford v Hughes*, 139 App Div 730, 731 [1910]; *see Matter of Schapiro*, 144 App Div 1, 9 [1911]; *Cowles v Rochester Folding Box Co.*, 81 App Div 414 [1903], *affd* 179 NY 87, 92 [1904]; *M. Farbman & Sons v Continental Cas. Co.*, 62 Misc 2d 236, 238 [1970], *affd* 66 Misc 2d 146 [1971]; *see also* 7 Lord, Williston on Contracts § 15:6 [4th ed]; Restatement of Contracts § 552 [1]).

Such agreements are "subversive of the orderly and efficient administration of justice" (*Matter of Schapiro*, 144 App Div at

9), even where a witness is contracted to tell the truth, rather than to testify falsely (*see Matter of Robinson*, 151 App Div 589, 600 [1912], *affd* 209 NY 354 [1913]). Agreements of this nature, under which witnesses might be permitted "to extort unreasonable fees for their testimony," portend to erode equal access to justice, create an incentive, even unconscious, toward biased testimony, and threaten the integrity of the judicial system by giving the appearance that justice is a commodity (*Hamilton v General Motors Corp.*, 490 F2d 223, 228 [1973], quoting *Wright v Somers,* 125 Ill App 256, *1 [1906] [enforcement of contracts to give factual testimony threatens "the raising up of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit, toward the perversion of justice; and toward corruption in our courts"]; *see Matter of Robinson*, 151 App Div at 600; *Davis v McDaniel*, 60 Misc 2d at 397).

While public policy prohibits enforcement of agreements to pay more than the statutory fee to fact witnesses for testimony (*see Matter of Robinson*, 151 App Div at 600; *Matter of Schapiro*, 144 App Div at 9), when such testimony can effectively be secured through the subpoena process (*see Clifford v Hughes*, 139 App Div at 731), it is generally accepted that such witnesses may properly be compensated for the loss of their time spent testifying (*see e.g. In re Telcar Group, Inc.*, 363 BR 345, 353-354 [2007]; *State of New York v Solvent Chem. Co., Inc.*, 166 FRD 284, 289 [1996]; *Hamilton v General Motors Corp.*, 490 F2d at 229; *Matter of Robinson*, 151 App Div at 600; *Matter of Schapiro*, 144 App Div at 9-10). Indeed, such compensation is expressly permitted under the New York Rules of Professional Conduct. Rules of Professional Conduct (22 NYCRR 1200.0) rule 3.4 (b) prohibits a lawyer from "offer[ing] an inducement to a witness that is prohibited by law or pay[ing], offer[ing] to pay or acquiesc[ing] in the payment of compensation to a witness contingent upon the content of the witness's testimony or the outcome of the matter." Nevertheless, the rule provides that "[a] lawyer may advance, guarantee or acquiesce in the payment of . . . reasonable compensation to a witness for the loss of time in attending, testifying, preparing to testify or otherwise assisting counsel, and reasonable related expenses" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.4 [b] [1]; *see* ABA Comm on Ethics and Prof Responsibility Formal Op 96-402 at 1 [compensating a fact witness for lost time does not "amount to paying him a fee for testifying," and is not barred by the Model Rules of Professional Conduct (internal quotation marks omitted)]).

Similarly, federal law punishes by fine and imprisonment, or both, any person who "directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial . . . before any court" (18 USC § 201 [c] [2]; *see also* 18 USC § 201 [b] [3]; *cf.* Penal Law § 215.00 [prohibiting conferring a benefit upon a witness under "an agreement or understanding" that his testimony will be influenced]). Nonetheless, that statute expressly exempts from the class of prohibited payments "the payment, by the party upon whose behalf a witness is called and receipt by a witness, of . . . the reasonable value of time lost in attendance at any such trial" (18 USC § 201 [d]).

That a distinction exists between compensating a witness for the reasonable value of lost time and paying a witness for his or her testimony is easily comprehended. Where a fact witness is compensated for losses, he or she does not stand to gain anything by giving testimony but, rather, is kept in the same position as if he or she had not been required to take the time to testify. Payment to a fact witness which bears no relation to the witness's reasonable losses, on the other hand, is nothing more than a fee for testifying that permits "strangers to [the] litigation" to "profit" from it (*Goldstein v Exxon Research & Eng'g Co.*, 1997 WL 580599, *2, 1997 US Dist LEXIS 14600, *6 [1997]; *see Rocheux Intl. of N.J. v U.S. Merchants Fin. Group., Inc.*, 2009 WL 3246837, 2009 US Dist LEXIS 93082 [2009]; *cf. In re Telecar Group, Inc.*, 363 BR at 355).

While the distinction between compensation for lost time and payment of fees for testimony is easily articulated, the boundary between the two categories may, in practice, prove obscure. Payments that, although not contingent upon content or outcome, are unreasonably high or disproportionate to the value of the time actually spent testifying can give rise to an inference that the payment was actually a fee for testifying, which carries with it the possibility that the witness will be unconsciously inclined to give testimony favorable to the party who has paid him or her (*see Centennial Mgt. Servs. Inc. v Axa Re Vie*, 193 FRD 671, 679-680 [2000]; ABA Comm on Ethics and Prof Responsibility Formal Op 96-402 at 2 ["the amount of such compensation must be reasonable, so as to avoid affecting, even unintentionally, the content of a witness's testimony"]; NY St Bar Assn Comm on Prof Ethics Op 668 at 4 [1994] [rule permitting reasonable compensation for lost time "is designed to

prevent compensation that would have a tendency to lead to the production of fraudulent evidence and to the giving of falsely colored testimony as well as to (prevent) outright perjury" (internal quotation marks omitted)]). The goal is always to "draw the line between compensation that enhances the truth seeking process by easing the burden of testifying witnesses, and compensation that serves to hinder the truth seeking process because it tends to [unconsciously] 'influence' witnesses to 'remember' things in a way favorable to the side paying them" (NY St Bar Assn Comm on Prof Ethics Op 668 at 4).

The plaintiffs assert that, as a matter of law, the payment to Dr. Krosser of $10,000 for one afternoon of his time spent testifying does not constitute reasonable compensation for time lost and, as such, his testimony was rendered inadmissible. The defendant maintains that the payment, which was made directly to Dr. Krosser's medical practice, was proper compensation for the time that Dr. Krosser, an orthopedic surgeon, could otherwise have spent seeing patients or performing surgery.

The defendant suggests that the payment made to Dr. Krosser was commensurate with the amount Dr. Krosser ordinarily charges to testify as an expert. There are, however, important differences between expert witnesses and fact witnesses. Experts are under no public duty, nor can they be compelled, to testify (*see People ex rel. Kraushaar Bros. & Co. v Thorpe*, 296 NY 223, 225 [1947]). Their opinion testimony involves "special knowledge and skill . . . and often requires examination and study upon a particular branch of science . . . about which they are to testify" (*Matter of Schapiro*, 144 App Div at 9; *see People ex rel. Kraushaar Bros. & Co. v Thorpe*, 296 NY at 225). Moreover, the testimony of a particular expert is not ordinarily necessary to the resolution of a case in the same manner as is the testimony of a fact witness who has personal knowledge peculiar to the case at hand. Thus, while fact witnesses have a public duty to testify and are limited to receipt of statutory fees and compensation for lost time, expert witnesses are justified in receiving compensation for their efforts (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.4 [b] [2]). Here, Dr. Krosser was not called to provide any medical evidence. Therefore, because no special knowledge or examination and study was required for the testimony given by Dr. Krosser, the defendant's suggestion that the payment to Dr. Krosser was commensurate with his normal expert fees detracts from its assertion that the payment was merely reasonable compensation for time lost testifying.

Nevertheless, we need not determine whether the payment to Dr. Krosser was reasonable in order to resolve this appeal. The case before us is not one to enforce any agreement between Dr. Krosser and the defendant (*cf. Clifford v Hughes*, 139 App Div 730 [1910]; *Hamilton v General Motors Corp.*, 490 F2d 223 [1973]). Nor are we presented with an attorney disciplinary matter (*cf. Matter of Robinson*, 151 App Div 589 [1912]; *Matter of Schapiro*, 144 App Div 1 [1911]). The question, rather, is what effect the payment to the fact witness had on the action in which that witness's testimony was presented.

Even assuming that the $10,000 payment was unreasonable, we conclude that, contrary to the plaintiffs' contention, the exclusion of Dr. Krosser's testimony was not the required remedy in this case. Our legal system generally "leave[s] the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury" (*Hoffa v United States*, 385 US 293, 311 [1966]). Accordingly, for example, a witness who has been promised a favorable plea bargain in exchange for his or her truthful testimony is competent to testify, even though the promise of a reduced sentence undoubtedly creates a motive to fabricate (*see People v Jackson*, 74 NY2d 787, 789-790 [1989]; *see also United States v Persico*, 832 F2d 705, 717 [1987] [paid informant is competent to testify], *cert denied* 486 US 1022 [1988]; *United States v Cervantes-Pacheco*, 826 F2d 310, 315 [1987] [same], *cert denied sub nom. Nelson v United States*, 484 US 1026 [1988]; *United States v Avila-Macias*, 577 F2d 1384 [1978] [same]). In such cases, "a criminal defendant is entitled to have the jury informed that a prosecution witness has been offered a 'favorable deal' in exchange for his testimony," and instructed as to the potential resulting bias (*People v Thomasula*, 78 NY2d 1051, 1053 [1991]; *see People v Jackson*, 74 NY2d at 789-790; *see also United States v Persico*, 832 F2d at 717 ["the credibility of the compensated witness, like that of the witness promised a reduced sentence, is for a properly instructed jury" (internal quotation marks and citation omitted)]; *United States v Wilson*, 904 F2d 656, 659 [1990] [discussing procedural safeguards required by due process when testimony of a paid informant is presented], *cert denied sub nom. Bogus v United States*, 502 US 889 [1991]).

In the same vein, witnesses with a direct interest in civil litigation have long been permitted to testify (*see* CPLR 4512; *Coleman v New York City Tr. Auth.*, 37 NY2d 137, 142 [1975]

["Under the common law, a person was incompetent to testify, if interested in the event, on the supposed ground that he or she was unworthy of belief but . . . interest as a disqualification has been abolished" (citations omitted)]; *Matter of Shore [Parklane Hosiery Co.], 67 AD2d 526, 536 n 5 [1979] ["the trend of the law is that a witness' self-interest goes to his credibility and not to his competency"]).

Here, as in cases in which interested witnesses testify or in which testimony is induced by a promise of a reduced sentence, "we have confidence in the jury's ability to assess counsels' arguments" about the suspect credibility of factual testimony by a paid fact witness and "to evaluate [that] witness' credibility accordingly" (*United States v Persico*, 832 F2d at 717). Therefore, we conclude that the appropriate remedy in a case such as this one, where one might reasonably infer that a fact witness has been paid a fee for testifying, is to permit opposing counsel to fully explore the matter of compensation on cross-examination and summation, and to leave it for a properly instructed jury to consider whether the payment made to the witness was, in fact, disproportionate to the reasonable value of the witness's lost time and, if so, what effect, if any, that payment had on the witness's credibility (*see Jamaica Time Petroleum, Inc. v Federal Ins. Co.*, 366 F2d 156, 158 [1966]; *Goldstein v Exxon Research & Eng'g Co.*, 1997 WL 580599, 1997 US Dist LEXIS 14600 [1997]; *Fund of Funds, Ltd. v Arthur Andersen & Co.*, 545 F Supp 1314, 1370 [1982]; *but see Golden Door Jewelry Creations, Inc. v Lloyds Underwriters Non-Mar. Assn.*, 865 F Supp 1516, 1526 [1994]).[1]

■ In this case, the Supreme Court properly allowed the plaintiffs' counsel to cross-examine Dr. Krosser without limitation regarding the $10,000 payment that was made to him, and also properly permitted counsel to adequately address the issue in summations. The Supreme Court erred, however, in denying the plaintiffs' request for an explicit instruction to the jury regarding witness compensation.

While the Supreme Court instructed the jury that it should consider bias or prejudice in determining the weight to be given

---

1. In fashioning this remedy, we note that we are not presented with a situation in which a fact witness was paid a fee contingent upon the outcome of the litigation. We also do not foreclose the possibility that, in certain cases, the disproportionality of the payment to the reasonable value of the witness's lost time might be determinable as a matter of law, in which case the court would instruct the jury accordingly. The only question then left for the jury would be the effect, if any, of the payment on the witness's credibility.

to any particular witness's testimony, this general charge was insufficient under the circumstances. Just as a jury that hears testimony in a criminal trial from a witness who is testifying in exchange for a promise of leniency is given a specific instruction regarding the possibility of bias (*see People v Jackson*, 74 NY2d at 790), we conclude that, in light of the important public policy considerations concerning fees paid to fact witnesses, more than the general credibility charge is also warranted where, as here, a reasonable inference can be drawn that a fact witness has been paid an amount disproportionate to the reasonable value of his or her lost time.[2] In crafting an appropriate instruction, trial courts should bear in mind the general principles regarding fact-witness testimony heretofore discussed, including a fact witness's public duty to testify for the statutory fee of $15; the permissibility of voluntary compensation for the reasonable value of time spent in testifying; the goal of drawing the line between compensation that merely eases the burden of testifying and that which tends to unintentionally influence testimony; the inference, which may be drawn from the disproportionality of the payment to the reasonable value of lost time, that a fee for testimony has been paid; and the potential for unconscious bias that such a fee may create (*see Matter of Robinson*, 151 App Div at 600; *Hamilton v General Motors Corp.*, 490 F2d at 228; *Alexander v Watson*, 128 F2d at 630; *Centennial Mgt. Servs. Inc. v Axa Re Vie*, 193 FRD at 679-680; Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.4 [b]; NY St Bar Assn Comm on Prof Ethics Op 668; 8 Wigmore, Evidence § 2202 [McNaughton Rev 1961]).

■ Although the trial court here failed to give a specific instruction regarding fact-witness compensation to the jury, under the particular circumstances of this case, the charge error does not require reversal. Dr. Krosser was called as a witness by the defendant for the sole purpose of testifying as to a single fact recorded in his medical notes. Dr. Krosser admitted that he had no personal recollection of speaking with the plaintiff and that his testimony was based only on what was written in his note. The jury's evaluation of this testimony was, therefore, only minimally dependent upon an assessment of Dr.

---

2. We do not suggest that a specific jury instruction is required on every occasion in which a witness might be regarded as biased. For example, bias owing to a witness's close or familial relationship with a party is unavoidable, and does not implicate the ability of parties to access the judicial system, or create the appearance that justice is for sale.

Krosser's credibility. In other words, the plaintiffs do not challenge the believability of Dr. Krosser's testimony that he made a particular notation in the injured plaintiff's medical chart. Rather, they dispute the accuracy of the note itself. Because the payment of fees to a fact witness goes merely to the credibility of the witness, in view of the nature of Dr. Krosser's testimony, the charge error here was not so prejudicial as to warrant reversal and a new trial (*see Coleman v New York City Tr. Auth.*, 37 NY2d at 143).

In light of our determination, we need not reach the defendant's remaining contentions.

Accordingly, the appeal from the judgment dated April 13, 2009, is dismissed, as that judgment was superseded by the amended judgment dated May 18, 2009, and the amended judgment dated May 18, 2009, is affirmed insofar as appealed from.

DICKERSON, BELEN and LOTT, JJ., concur.

Ordered that the appeal from the judgment dated April 13, 2009, is dismissed, as that judgment was superseded by the amended judgment dated May 18, 2009; and it is further,

Ordered that the amended judgment dated May 18, 2009, is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant Communications Specialists, Inc.

---

Motion by Communications Specialists, Inc., on appeals from a judgment and an amended judgment of the Supreme Court, Westchester County dated April 13, 2009, and May 18, 2009, respectively, inter alia, to strike from the appellants' reply brief the preliminary statement, Point I, the last paragraph on page 16, the entire page 17, and the first paragraph on page 18. By decision and order of this Court dated October 28, 2010, that branch of the motion which was to strike these portions of the appellants' reply brief was held in abeyance and referred to the Justices hearing the appeals for determination upon the argument or submission thereof. Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeals, it is Ordered that the branch of the motion which was to strike from the appellants' reply brief the preliminary statement, Point I, the last paragraph on page 16, the entire page 17, and the first paragraph on page 18 is granted, those portions of the reply brief are stricken, and those

portions of the reply brief have not been considered in the determination of the appeals. SKELOS, J.P., DICKERSON, BELEN and LOTT, JJ., concur.